IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES R. CLEMONS and PATRICIA CLEMONS, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION H-12-0334 |
| WPRJ, LLC, PHYLLIS A KERSEG, WARREN M. KERSEG, JANET L. ADAMS, and RICHARD G. ADAMS, | § § § § | |
| Defendant. | § § | |

## <u>OPINION AND ORDER OF TRANSFER</u>

Pending before the Court in the above referenced cause, arising out of Plaintiff Charles R. Clemons and Patricia Clemons' investment in a project to purchase land, construct, and sell townhomes in Phoenix, Arizona, and alleging breach of partnership agreement, breach of fiduciary duty, fraud and fraudulent inducement, violation of the Texas Securities Act, Texas Revised Civil Statutes article 581-22, unjust enrichment/money had and received, and civil conspiracy, are the following motions, all with supporting exhibits attached: (1) Defendants Richard G. Adams and Janet L. Adams' motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer venue in the interests of justice under 28 U.S.C. § 1406 (instrument #4); (2) Defendants Richard G. Adams and Janet L. Adams' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (#6); (3) Defendant WPRJ,

LLC's motion to dismiss for improper venue or, alternatively, to transfer venue under 28 U.S.C. § 1406(a) (#8); (4) Defendant WPRJ, LLC's motion to dismiss for lack of personal jurisdiction (#10); (5) and a joint motion for ruling on pending motions (#21).

### Allegations in the Complaint (#1)

Plaintiffs assert that the Court has diversity jurisdiction under 28 U.S.C. § 1332 over this action and proper venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Willis, Montgomery County, Texas.[1] Plaintiffs Charles R. Clemons and Patricia Clemons are residents of Texas. WPRJ, LLC is an Arizona limited liability with its principal place of business in Carefree, Arizona, while the individual Defendants are residents of Arizona and believed to be members, managers, owners, and agents of WPRJ, LLC who have done

---

[1] The general venue statute, 28 U.S.C. § 1391(b), provides,

A civil action may be brought in–

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

business with the State of Texas but do not maintain registered agents here. Alternatively, each of the Defendants is the alter ego of the other. "A unity of interest and lack of corporate separateness exists such that the actions of any one Defendant is to be one and the same as the actions of each of the other Defendants.[*sic*]" #1 at ¶ 9.

Plaintiffs claim that venue in this district is proper pursuant to 28 U.S.C. § 1391 because (1) Defendants are subject to the personal jurisdiction of the courts of Texas and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Willis, Montgomery County, Texas, (2) Plaintiffs purposely directed their misrepresentations to Plaintiffs in Texas, (3) Plaintiffs' reliance and damages were foreseeable by Defendants and occurred in Texas, and (4) Defendants performed intentional tortious acts against Texas residents and could reasonably anticipate being required to answer in Texas state court for their wrongful actions.

In 2009 Defendants contacted Plaintiffs in Texas and stated that they wanted to purchase real estate in Phoenix, Arizona, develop the land by constructing townhomes, and sell those homes, a project dubbed "Tres Agua." They sought funding and asked Plaintiffs to invest as partners a total of $400,000.00 in exchange for a 10% ownership interest in the joint venture, and Plaintiffs agreed. The complaint asserts, "The partnership agreement

constitutes a valid and enforceable contract." #1, ¶ 18. Each Defendant funded and participated in Tres Agua and exercised significant influence over management and operational and financial decisions of WPRJ, LLC relating to the project. Defendants represented that they would purchase the real property within six months of initial funding by Plaintiffs, begin building the townhomes within one year of receiving the funding, and begin selling the townhomes within eighteen months of the funding. They also promised Plaintiffs "a minimum 100% return of investment." #1, ¶ 11. Relying on these representations, Plaintiffs agreed to invest $400,000.00 in Tres Agua, and on June 28, 2006 wired Defendants an initial $150,000.00. On July 5, 2006, WPRJ executed a promissory note in Willis, Montgomery County, Texas in favor of Plaintiffs for $400,000.00, with the principal amount due within sixty days after the closing of the last unsold townhome of the development, with partial payments of at least $10,000.00 for each townhome built and sold. On December 18, 2006, Plaintiffs sent Defendants an additional $50,000.00 payment, on January 18, 2007 a $75,000.00 payment, and on May 1, 2007 a final $125,000.00.

On or about September 19, 2007, Defendants purchased real property located at 4040 N. 22nd Street, Phoenix, Arizona 85016 for the project. Defendants informed Plaintiffs that they purchased the property in the name of WPRJ, LLC for $2,000,000.00, part of which was financed by a third-party lender. As of February 3,

2012, when the complaint was filed, Defendants had not begun construction or development of the property.   Plaintiffs kept contacting Defendants to check on the status of Tres Agua, but Defendants always offered an excuse for failing to begin construction.   Plaintiffs demanded but did not receive an accounting regarding the partnership's profits and property.   Then Defendants stopped communicating with Plaintiffs.   Defendants also failed to make timely payments for the financed portion  of the property and are at risk of losing it to foreclosure.   Plaintiffs suspect and believe Defendants leased the property to a third party for the storage of equipment and machines, contrary to the parties' agreement.

## Claims Against the Kerseg Defendants

With documentary evidence the Defendants report that co-Defendants Warren M. Kerseg and Phyllis Ann Kerseg have voluntarily filed for Chapter 7 bankruptcy in the District of Arizona.   Title 11 U.S.C. § 362  "provides that the filing of a bankruptcy petition operates as a stay of the 'commencement or continuation' of all non-bankruptcy judicial proceedings against the debtor.   The stay is automatic and 'springs into being immediately upon the filing of a bankruptcy petition'" in a voluntary bankruptcy case.   *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 343-44 (5th Cir. 2003).   Thus all Plaintiffs' claims against the Kerseg Defendants are stayed.

## Relevant Law

**Personal Jurisdiction and Rule 12(b)(2)**

Whether personal jurisdiction may be exercised over a nonresident is a question of law. *Cooper v. McDermott Intern., Inc.*, No. 93-2907, 1995 WL 450209, *3, 62 F.3d 395 (Table) (5th Cir. July 6, 1995), *citing Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993)("Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ."). Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a *prima facie* case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644,

648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV,* 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.[2] When a defendant disputes factual bases for personal jurisdiction, the district court may

---

[2] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings. In this situation it is often "preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241,

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

-7-

consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

The court must find that it has personal jurisdiction over the defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007). The Texas long-arm statute[3] extends jurisdiction

---

[3] The Texas long-arm statute, Texas Civil Practice & Remedies Code § 17.042, which permits Texas courts to exercise jurisdiction over nonresident defendants that "do business" in Texas, provides,

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

The list of activities that constitute "doing business" in Texas is not exclusive. *PHC-Minden*, 235 S.W. 3d at 166.

to the limits of the federal due process.   *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, 2011 WL 6156856 *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Thus because in Texas the issue of whether a court has personal jurisdiction over a defendant is determined by federal constitutional law, a plaintiff in a diversity action in federal court in Texas[4] need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000);   *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction.   *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999).   "Where a defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the

---

[4] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), *cert. denied*, 531 U.S. 917 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.[5]

---

[5] In *Johnston*, the Fifth Circuit discussed how extremely difficult it is to establish general jurisdiction over a nonresident defendant. 523 F.3d at 610-11. The panel examined the Supreme Court's ruling in *Helicopteros*, 466 U.S. at 418-19, in which it found that defendant's contacts with Texas, purchasing helicopters, spare parts, and accessories for more than $4 million over a six-year period from a Texas company, sending management and maintenance personnel to Texas for technical consultations and prospective pilots to Texas for training, and receiving a check for more than $5 million drawn on a Texas bank, were insufficient to support personal jurisdiction. Among other cases from this Circuit, *Johnston* cited *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003), in which the Fifth Circuit concluded that general jurisdiction did not exist even though the defendant regularly arranged and received interline shipments to and from Texas and sent sales people to Texas to develop business, negotiate contracts and service national accounts; *Wilson v. Belin*,

If the defendant has relatively few contacts, the court may still exercise personal jurisdiction over that party if the suit arises out of or is related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8. Plaintiffs claim that the Court has specific jurisdiction over Defendants in this case.

The Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin*, 587 F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Moreover, the Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "'(1) whether the defendant has minimum

---

20 F.3d 644, 651 (5th Cir. 1994)("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year *pro bono* association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over him."); *Access Telecom*, 197 F.3d at 717 (in order to confer general jurisdiction it is not sufficient that a corporation do business in Texas; it must have a business presence in Texas); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000)(holding that general jurisdiction did not exist where the defendant occasionally sold products to entities in Texas that used the defendant's products for projects in Texas and the defendant's employees made field visits to Texas between December 1992 and December 1993). *Johnston*, 523 F.3d at 610-12 (concluding that Multidata's sale of approximately $140,000 worth of goods over a five-year period to Texas customers and its employees' occasional travels to Texas to service equipment or attend trade conventions did not support general jurisdiction over Multidata).

contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[6]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[7]; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.' The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third party.''" *McFadin*, 587 F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867,

---

[6] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005).

[7] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King*, 471 U.S. at 472. For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation." *Guardian Royal*, 815 S.W. 2d at 229-33.

871-72 (5ᵗʰ Cir. 1999)(*quoting Burger King Corp. V. Rudzewicz*, 471 U.S. 462 (1985)).  Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident.  *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L, 2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5ᵗʰ Cir. 1986).

"[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5ᵗʰ Cir. 1982).  "The nature and quality of these contacts must justify the conclusion that defendant should have reasonably anticipated being haled into court in the forum state." *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5ᵗʰ Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

The mere fact that a party contracted with a resident of Texas is insufficient to establish minimum contacts necessary to support personal jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5ᵗʰ Cir. 2007)("Merely contracting with a resident of the forum state does not establish minimum contacts."); *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5ᵗʰ Cir. 2009).  Nor does the exchange of communications in the developing and

-14-

performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas.   *Id.; id.; Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).   "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction."   *Helicopteros*, 466 U.S. at 417.   Moreover jurisdiction may not be based on the fortuity of one party residing in the forum state.   *McFadin*, 587 F.3d at 760.   Mere foreseeability, by itself, does not create personal jurisdiction. *Moncrief Oil*, 481 F.3d at 313.

A choice-of-law provision may be a relevant factor for determining purposeful activity directed toward the forum state, but is not necessarily determinative, and standing alone, it is insufficient to confer jurisdiction.   *Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520 at *4, *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482.   The court must examine the quality and nature of the defendant's activities in the forum in their totality, rather than the number, to decide whether the defendant purposely availed itself of the privileges offered by the forum state.   *Id., citing Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

**Venue**

A court that lacks personal jurisdiction over a defendant may still transfer the matter to another venue under either 28 U.S.C.

§ 1404(a) or § 1406(a).  While Defendants cite § 1406 for their motions to transfer, they confuse the requirements under the two statutes, e.g., apply the private and public interest factors and convenience factors, which relate to § 1404(a), to their analysis under § 1406.

Where a case is in a proper venue the district court has broad discretion to transfer a case under 28 U.S.C. 1404(a)[8] for the convenience of parties and witnesses and in the interest of justice.[9]  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008).  Nevertheless the court must initially determine whether a civil action "'might have been brought' in the destination venue."  *Id.* at 312.  The general venue statute, 28 U.S.C. § 1391, quoted in footnote 1, governs a plaintiff's choice of venue.  *Id.* "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen*, 545 F.3 at 313.  Under § 1404(a) the court is not authorized to dismiss the case, as it is under

---

[8] Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[9] It is improper for the court to consider the convenience of counsel, which is irrelevant, in reviewing a transfer of venue under § 1404(a).  *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

1406(a).  *Id.*

The Fifth Circuit has adopted the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, a *forum non conveniens* case, and applied them to determine whether a transfer is for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a).  *In re Volkswagen*, 545 F.3d at 313 & nn.9 and 10 *(citing Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.3d 53, 56 (5th Cir. 1961)), *cert. denied*, 555 U.S. 1172 (2009).  The moving party must show good cause for the transfer.  *Id.* at 314.  "When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.*  The private interest factors are "'(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at 315.  The public interest factors include "'(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'"  *Id.*  These factors, while appropriate for most cases, are not exhaustive or exclusive, and

none is dispositive. *Id.*

Because Defendants argue that venue here is improper, if they are correct their motions to transfer would fall under § 1406.

Under 28 U.S.C. § 1406(a), where venue is "laid in the wrong division or district," the district court must either dismiss the case or transfer it to a proper venue in "any district or division in which it could have been brought"; where venue is proper, under 28 U.S.C. § 1404(a) a court may transfer the case "to any other district or division where it might have been brought or to any district or division to which all parties have consented" "for the convenience of parties and witnesses, in the interest of justice."

"[A] district is 'wrong' within the meaning of § 1406 whenever there exists an 'obstacle (to) an expeditious and orderly adjudication' on the merits. Inability to perfect service of process on a defendant in an otherwise correct venue is such an obstacle." *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1105 (5th Cir. 1981), *citing Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967). Lack of personal jurisdiction is another ground for such a transfer. *Ellis*, 646 F.2d at 1105 and n.7.

Once a defendant challenges venue as improper under Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 291, 396 (S.D. Tex. 2011). In deciding whether the venue is proper, the court may look at evidence in the

record beyond those facts alleged in the complaint and its admissible attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)(*citing Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 448 (5th Cir. 2008)), *cert. denied*, 130 S. Ct. 1054 (2010).  On a Rule 12(b)(3) motion, the Court must accept as true all the allegations in the complaint and resolve all factual conflicts in favor of plaintiff. *Hamilton v. United Parcel Service, Inc.*, Civ. A. No. 1:11-CV-240, 2012 WL 760714, *5 (E.D. Tex. Feb. 13, 2012), *citing Braspetro Oil Services, Co. v. Modec (USA), Inc.*, No. 06-20561, 240 Fed. Appx. 612, 615 (5th Cir. May 11, 2007), and 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2004).  The decision whether to dismiss or transfer the case under § 1406(a) lies within the discretion of the Court. *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967).

### Pending Motions

Because all the motions to dismiss or transfer are nearly identical, the Court will focus on those of the Adams Defendants and then examine any additional points added by WPRJ, LLC.

The Adams Defendants seek dismissal of the case for improper venue because all Defendants reside in Arizona and no substantial part of the claims occurred in Texas.  Alternatively, they request the Court to transfer the case to the United States District Court of Arizona, Phoenix Division.  The Adams Defendants emphasize that

they have not had continuous or systematic contacts with Texas.  As the only event to occur in Texas, Plaintiffs executed the promissory note (#5, Ex. A-1) in Texas with WPRJ, LLC, an Arizona Limited Liability Company.  The Adams Defendants, with supporting affidavits, argue that the following substantial events occurred in Phoenix, Arizona:  (1) Plaintiffs forwarded funds to Phoenix; (2) the bank loan for land purchase took place in Phoenix; (3) the purchase of the land occurred in Phoenix; (4) all efforts to build condominiums took place in Phoenix; (5) the impending sale or foreclosure will occur in Phoenix; and (6) the failure to develop and sell the condominiums took place in Phoenix.

The Adams Defendants further contend that the claims for breach of fiduciary duty, fraud and fraudulent inducement, civil conspiracy, unjust enrichment, and violation of the Texas Security Act could not have occurred in Texas because the Adams Defendants have not been to Texas in at least ten years.  Moreover Plaintiffs will have to come to Phoenix to present their claims against the Kersegs in the bankruptcy court, so they can litigate these claims in Arizona, too.  Defendants also maintain that there is no fraud relating to the promissory note; the project just became undoable because of the economic recession and because the bursting of Arizona's housing bubble had a severe impact.

Alternatively, the Adams Defendants seek transfer of this action to the District of Arizona, Phoenix Division, in the

interests of  justice under 28 U.S.C. § 1406(a).  Defendants are subject to the jurisdiction of the United States District Court for the District of Arizona, Phoenix Division, venue is proper there, and the transfer is in the interest of justice.  Among the private interest factors supporting a transfer are that (1) all Defendants reside in the Phoenix area, (2) all the documents are there, (3) the Tres Agua project was to be performed there, and (4) Texas Plaintiffs' choice of forum should be given little deference since it has no meaningful ties to the controversies that are the subject of this litigation.  Defendants also list ten witnesses that reside in the Phoenix area and a brief statement about what they will testify.   Finally  the  Adams  Defendants  point  out  that  the promissory note states, "Upon . . . default, Holders may exercise any  remedies  or  combination  of  remedies  Holder  may  have  under Arizona law."  #4, Ex. A-1.  The final provision of the promissory note  provides  "Arizona Law.   This  Promissory  Note  shall  be construed in accordance with and governed by the laws of the State of Arizona."  *Id.*  Defendants further urge that Arizona courts are more familiar with Arizona law.

The  Adams  Defendants  argue  that  the  Court  lacks  personal jurisdiction over them.  They are not residents of Texas and have no purposeful contacts with Texas.  Plaintiffs' claim arose out of their signing of the promissory note with Co-Defendant WPRJ, LLC, on whose behalf Co-Defendant Phyllis Kerseg was the signatory.  The

Adams Defendants were not in Texas when the promissory note was signed.  Furthermore, to establish specific jurisdiction in a case based on contract, more than mere contracting with a resident of the forum state is necessary to subject a nonresident to the forum's jurisdiction.  *Colwell Realty Invest., Inc. v. Triple T Inns, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).  Moreover, although the promissory note was signed in Texas, all relevant acts occurred in Arizona:  Plaintiffs sent money to Arizona and the repayment obligation is triggered by property sales in Arizona. The promissory note identifies Arizona law as the governing law.

There is no general jurisdiction over the Adams Defendants because they have not had continuous or systematic contacts with Texas.

Moreover asserting jurisdiction over Defendants would offend traditional notions of fair play and substantial justice and would be inconsistent with constitutional due process.  Defendants list ten witnesses who live in Arizona and would be burdened by traveling to Texas.  Arizona has a greater interest in adjudicating the dispute because the promissory note obligation is wholly triggered by events in Arizona.  They reiterate that Plaintiffs must come to Arizona anyway to pursue their claims against Kerseg in bankruptcy court in Phoenix.  The state's interest in efficient resolution of the controversy is better served in Arizona because

all Defendants, witnesses, and documents are in the Phoenix area, while the only thing located in Texas are the Plaintiffs.   This litigation is the result of loan proceeds sent to Arizona to build an Arizona project; the greater impact is borne in Arizona because more that $400,000.00 were expended there because of the bursting of Arizona's housing bubble, and this failure along with numerous others should be dealt with by an Arizona court.   The tort claims against Adams Defendants could not have occurred in Texas because they have not been to Texas for at least ten years.   They contend that even if a court has jurisdiction over one alleged conspirator, that fact does not confer jurisdiction over non-resident alleged co-conspirators.   *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-09 (E.D. Tex. 1994).[10]

WPRJ, LLC provides some minor additions to these arguments.

---

[10] Plaintiffs argue that this case is not applicable because the forum in which multiple conspirators committed violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") was not a forum in which the plaintiffs wanted to sue.   Here the Clemonses chose to sue in Texas, a forum which had personal jurisdiction over one of the alleged conspirators.

The Court notes that RICO has its own jurisdictional provisions.   In *Hawkins,* a RICO civil conspiracy case, the court addressed a particular provision in the statute that permitted general nationwide service of process, 18 U.S.C. § 1965(d), and concluded that it did not provide personal jurisdiction over all co-conspirator defendants even if the forum state had jurisdiction over one conspirator.   The Fifth Circuit has not recognized this conspiracy theory of personal jurisdiction.   *Hawkins*, 890 F. Supp. at 608; *Conwill v. Greenberg Traurig, LLP*, Civ. A. No. 09-4365, 2009 WL 5178310, *4 (E.D. La. Dec. 22, 2009).   This Court finds that instant case does not involve either a RICO conspiracy claim or relate to any nationwide service provision, and thus *Hawkins* is not relevant.

Of its four members when the promissory note was signed (the Adams Defendants and the Kerseg Defendants), only Phyllis Kerseg was in Texas on behalf of WPRJ, LLC for the signing.  It insists that the tort claims for breach of fiduciary duty, fraud and fraudulent inducement, and civil conspiracy, as well as the common law claims of unjust enrichment/money had and received and violations of the Texas Securities Act, could not have occurred in Texas as WPRJ, LLC was at all times in Arizona except for the signing of the promissory note.

Regarding lack of personal jurisdiction, WPRJ, LLC insists there is no specific jurisdiction because it does no business in or with the State of Texas, all relevant acts for this litigation took place in Arizona, and there was no purposeful availment of Texas by WPRJ, LLC.  Nor does it have continuous or systematic contacts with Texas to support general jurisdiction. Moreover the exercise of jurisdiction over WPRJ, LLC would offend traditional notions of fair play and substantial justice because the ten identified witnesses live in Arizona, Texas does not have as great an interest in adjudicating the dispute because the promissory note obligation is wholly triggered by events in Arizona, Plaintiffs' interest in convenient and effective relief is not possible solely in Texas because the Kersegs are in bankruptcy court in Phoenix, the interstate judicial system's interest in obtaining the most efficient resolutions of his matter requires dismissal in Texas

because all defendants, all witnesses, and all documents are in Phoenix. Moreover to defeat Plaintiffs' broad accusations, despite their failure to identify with specificity any act committed by WPRJ, LLC in Texas, WPRJ, LLC will have to marshal evidence from its bankers, accountants, appraisers, other investors and contractors, all of whom are in the Phoenix area

**Plaintiffs' Responses *re* Personal Jurisdiction (#13 and 14)**

As examples of purposeful contacts with Texas supporting specific jurisdiction here, Plaintiffs broadly refer to the alleged purposeful solicitation by WPRJ, LLC of investment by Plaintiffs in Texas during visits by its members to Texas, without specifying any except the signing of the promissory note by Phyllis Kerseg; the representations made by Defendants while in Texas, but not identifying any one specifically; and the performance WPRJ, LLC was supposed to carry out in Texas, again without particular facts. (In contrast, Defendants have shown performance of the construction and sale of the townhomes had to occur or fail to occur in Arizona and that Plaintiffs' investment payments were sent to Arizona.) Plaintiffs claim that each of WPRJ, LLC's contacts was significant, but do not show any contact beyond the signing of the note, nor why or how any other contact was important. They note that convenience is not a test for minimum contacts.

As for traditional notions of fair play and substantial justice, Plaintiffs observe that Defendants came to Texas to

solicit their investment, so requiring them to come to Texas to litigate is not an unfair or unreasonable burden.  They argue that the choice of law provision in the promissory note "plays no part in WPRJ's minimum contacts," and that much of this dispute will be resolved under Texas law, with which Texas courts are more familiar than Arizona courts.  As a fundamental social policy, Texas has a strong interest in its citizens' ability to sue foreign defendants who enter Texas to do business in Texas and who commit torts against Texas residents.  Moreover Plaintiffs claim that because they have full-time duties supervising their disabled daughter, it would be extremely inconvenient for them to litigate in Arizona.

### Plaintiffs' Response *re* Personal Jurisdiction (#14)

Plaintiffs argue that WPRJ purposefully solicited them, paid personal visits to Texas, took actions within Texas' borders, and was supposed to perform in Texas.  Many of the things which took place in Arizona are irrelevant to Plaintiffs' claims.  Convenience is not part of the test for minimum contacts; it is only part of the second prong for the exercise of personal jurisdiction over a defendant, the fairness test.  *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149, 152 (5th Cir. 1980).

Urging that specific jurisdiction exists because with the knowledge and involvement of the Adams Defendants, WPRJ, LLC and Phyllis Kerseg purposefully came to Texas and availed themselves of the privilege of conducting activity there, i.e., seeking benefit,

advantage, or profit,  Plaintiffs insist that their claims arose from Plaintiffs' signing of the promissory note with WPRJ, LLC, at which time it made significant representations while it was in Texas visiting the Clemonses.  Those contacts directed at Texas and the Clemonses  along with WPRJ, LLC's expected performance in Texas, where it breached the agreement, forms the basis of the Clemonses' entire claim.

        While the Arizona choice-of-law provision in the promissory note cannot be "ignored," the easily distinguishable facts in *Burger King* demonstrate that in this case the provision is meaningless.  471 U.S. at 482.  In *Burger King* a Michigan defendant protested against being sued in Florida even though the contract provided it would be construed under Florida law.  In this case, the Clemonses are not protesting Arizona's exercise of jurisdiction over them; WPRJ is protesting Texas' ability to exercise jurisdiction.  Plaintiffs argue that *Burger King* would only be relevant if WPRJ had sued the Clemonses in Arizona.

### Court's Decision

    Regarding personal jurisdiction, the Court finds that it has no general jurisdiction over this case because no party has argued that it does and there has been no showing that any Defendant had continuous and systematic contacts with Texas.

    The first step in determining whether there is specific personal jurisdiction over Defendants is to determine whether they

each have minimum contacts with Texas.  The only alleged personal contact purposefully directed toward Texas and the Clemonses was WPRJ, LLC's solicitation of the Clemonses' investment and execution of the promissory note, through Defendant Phyllis Kerseg acting on its behalf,[11] in Texas; the complaint does not allege that any of the other named Defendants had a direct contact with the forum state or communications with Plaintiffs.

As a threshold matter the Court finds that there are two agreements at issue here.  The promissory note with the Arizona choice-of-law provision on which Plaintiffs focus is one, but the more significant one, which includes and embraces the note agreement which was part of the consideration for the executing of the promissory note, is the partnership agreement to enable Defendants to fund, develop, build, and sell townhomes in the Phoenix area in return for a 10% interest in the joint venture for the Clemonses.  The promissory note, which is incident to this partnership agreement, was to fund, through the Clemonses investment, a substantial part of the Tres Agua project.  This suit is not limited to a claim of failure of Defendants' to make

---

[11] All claims against Kerseg are stayed because of the bankruptcy.  Even if they were not, because Plaintiffs allege that Phyllis Kerseg signed the promissory note on behalf of WPRJ, LLC, under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual even though the state has in personam jurisdiction over the corporation."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).

payments on the promissory note, but the failure of the Tres Agua project and the joint venture agreement. The only contact specified in the complaint was the signing of the promissory note. As noted, "[m]erely contracting with a resident of Texas is insufficient to establish minimum contacts necessary to support personal jurisdiction." *Moncrief Oil*, 481 F.3d at 311; *in accord Cardinal Health Solutions, Inc.*, 314 Fed. Appx. at 745. Nor does the exchange of communications in the course of developing and performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas. *Id.; id.; Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *McFadin*, 587 F.3d at 760 ("We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts."). Plaintiffs' complaint specifies that the partnership agreement, not the promissory note, is the basis of their breach of contract claim. #1, ¶¶ 18-21.

Plaintiffs have charged Defendants with fraud and fraud in the inducement. It is well established that commission of an intentional tort aimed a the forum state will satisfy the minimum contacts requirement. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)("[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the

analysis of the defendant's relevant contacts with the forum."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

The problem here is that Plaintiffs' conclusory fraud allegations, totally lacking in factual detail for support, fail to meet the pleading standards of Federal Rule of Civil Procedure 12)b)(6), no less of Rule 9(b).  While the sufficiency of the allegations of a complaint may be challenged by motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, even if the defendant does not file such a motion, the court "has the authority to consider the sufficiency of a complaint on its own initiative." *Landavazo v. Toro Co*., 301 Fed. Appx. 333, 336 (5th Cir. Dec. 5, 2008)(*citing Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)("As a general rule, a district court may dismiss a complaint on its own for failure to state a claim."), *cert. denied*, 129 S. Ct. 2417 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127

S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief

that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In addition to Rules 8(a) and 12(b)(6), fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).   The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

Plaintiffs have failed to meet these standards and therefore the Court will not consider the fraud and fraudulent inducement claims for purposes of determining personal jurisdiction.

Furthermore, as indicated *supra*, specific jurisdiction is "a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin*, 587

F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  Plaintiffs have asserted claims for breach of fiduciary duty, unjust enrichment/money had and received, and civil conspiracy, which they have alleged arise out of contacts with Texas.  This litigation did not arise out of or relate to Defendants' activities, i.e., executing the promissory note, in Texas.  Plaintiffs have failed to make a *prima facie* case for minimum contacts, and thus specific jurisdiction, for any of their causes of action.

Specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520, at *4, *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d at 778.  There was an obligation ultimately to perform repayment of the note to the Clemonses, fortuitously residing in Texas, but the inclusive partnership agreement established all other performance of the partnership agreement to occur in Arizona, which would have personal jurisdiction over all the parties.  Indeed the Arizona choice-of-law provision in the promissory note is a relevant factor for determining purposeful activity directed toward Arizona in light of all the other factors pointing to it as the proper venue and support personal jurisdiction in that state. *Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520 at *4, *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482.

-33-

Nor do the alleged contacts satisfy the "fair play and substantial justice" prong of the personal jurisdiction test. The nature, quality and number of contacts with Texas arising from this dispute pale in contrast to those with Arizona, while Arizona's interest in resolving the litigation arising out of the Tres Agua project, property contained within its borders, is far greater than Texas's. It is clear that not only do the Defendants all reside in Arizona, but all identified witnesses and documents are located there, too, as is the bankruptcy proceeding of the Kersegs, so an Arizona forum would provide efficient resolution of the dispute. Both states' federal district courts are capable of construing the law of either forum; indeed federal courts sitting in diversity constantly apply the laws of other states. Neither forum is so distant, given today's advanced transportation and the ease of travel, that traveling to the other would constitute a severe burden on any of these parties.

In sum, the Court concludes that the nature and quality of Defendants' contacts with Texas do not support the conclusion that Defendants should have reasonably anticipated being haled into court in Texas on any of the causes of action in this action and the exercise of personal jurisdiction by this Court over them in this suit would offend traditional notions of fair pay and substantial justice. Deference to a plaintiff's choice of forum "disappears" when, as here, the suit has no connection to the

chosen venue.  *Reed v. Final Oil and Chem. Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998).  Plaintiffs have failed to make a *prima facie* case of personal jurisdiction over Defendants arising out of Defendants' contacts with Texas for any of their causes of action.

Therefore because the Court finds it lacks personal jurisdiction over Defendants, the Court examines the motions to dismiss or for transfer in the interest of justice under § 1406(a). District courts have "'broad discretion in deciding whether to order a transfer.'"  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008)(citations omitted).

"Courts typically favor transfer over dismissal." *Scott v. U.S. Army*, 2008 WL 3914814835, *1 (W.D. Tex. June 20, 2008), *citing* 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3827 (2008).

The first question is whether this suit could have been brought in Arizona.  Both the first two prongs of the general venue statute, 28 U.S.C. § 1391(b), are met by the destination forum: all Defendants reside in the Phoenix area and a substantial part of the events or omissions in dispute occurred in, and all of the property at issue is located in, Arizona.  The Southern District of Texas does not satisfy either prong of § 1391(b).  As indicated above, the Arizona federal district court would have personal jurisdiction over all parties because of their involvement in the Tres Agua project, although such is not a requirement under §

1406(a).  *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007)(Section 1406(a) "permits a court to transfer a case 'to any district or division in which it could have been brought' regardless whether it has personal jurisdiction over the defendants."), *citing Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).   Nevertheless, "a district is 'wrong' within the meaning of § 1406(a) whenever there exists an 'obstacle (to) an expeditious and orderly adjudication' on the merits," *Ellis v. Southwestern Cor.*, 646 F.2d 1099, 1105 (5th Cir. 1981); *Allchem Performance Products, Inc.*, ____ F. Supp. 2d _____, Civ. A. No. H-10-3224, 2012 WL 2886714, *6 (July 13, 2012).   Lack of personal jurisdiction in this Court is a basis for such a transfer.  *Id.*, at 1105 and n.7; *id.*

Accordingly, for the reasons stated above the Court ORDERS the following:

(1)  All claims against the Kerseg Defendants are STAYED pursuant to 11 U.S.C. § 362;

(2)  Defendants' motions to dismiss for lack of personal jurisdiction and improper venue (#4,6,8, and 10) are DENIED;

(3) Defendants' motions to transfer the case (#4, 8) to the United States District Court of Arizona, Phoenix Division, under 28 U.S.C. § 1406(a), are GRANTED;

(4 The joint motion for ruling on pending motions (#21)

is MOOT.

**SIGNED** at Houston, Texas, this __28th__ day of __January__, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE